UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:06-cr-30 |
| v. ) | |
| ) | Collier/Lee |
| RAFAEL BERMUDES-SANCHEZ ) | |
| J. CARMEN IBARRA-OROZCO ) | |
| FRANCISCO JAVIER GOMEZ ) | |

## REPORT AND RECOMMENDATION

### Introduction

Defendants, Rafael Bermudes-Sanchez, J. Carmen Ibarra-Orozco, and Francisco Javier Gomez ("Defendants"), have filed a joint motion to suppress evidence seized as a result of a traffic stop on March 28, 2006 [Doc. No. 47] and a joint motion to permit expert testimony concerning the validity of the traffic stop [Doc. No. 51]. Defendants' motion to suppress has been referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. No. 49].

In their memorandum in support of the motion, Defendants seek to suppress the evidence seized from the vehicle on the grounds: (1) the traffic stop was unconstitutional because the officer did not have probable cause to believe a traffic violation had occurred; and (2) the scope of the officer's detention of the Defendants exceeded the purpose of the traffic stop [Doc. No. 48 at 4-8]. The Defendants also filed a motion to permit expert testimony in support of their motion to suppress [Doc. No. 51]. The government filed a response in opposition to the Defendants' motion to suppress [Doc. No. 53].

For the reasons stated herein, it is **RECOMMENDED** the motion to suppress [Doc. No. 47] and the motion to permit expert testimony [Doc. No. 51] be **DENIED**.

**Proceedings**

Generally, the Indictment charges Defendants with conspiracy to possess with the intent to distribute cocaine hydrochloride; possession with the intent to distribute cocaine hydrochloride; possession of firearms in furtherance of a drug trafficking crime; knowingly possessing firearms in and affecting commerce as illegal aliens; and Defendants seek to suppress the currency, firearms, and drug evidence found in their vehicle.

On August 22, 2006, the Court held an evidentiary hearing on Defendants' motion to suppress.[1] Present at the hearing were: (1) Defendants, (2) Attorney Sean Lewis for Defendant Bermudes-Sanchez; (3) Attorney Eric S. Cartee for Defendant Ibarra-Orozco; (4) Attorney Stephen M. Goldstein for Defendant Gomez; and (5) Assistant United States Attorney Perry H. Piper for the government. At the conclusion of the hearing, the parties were given the opportunity to make oral argument or submit their argument in the form of a supplemental brief. Defendant Gomez presented oral argument, and additional briefs were submitted on behalf of Defendants Bermudes-Sanchez and Ibarra-Orozco [Doc. No. 57] and the government [Doc. No. 58], which have been considered by the Court.

**Testimony**

The government offered the testimony of Tennessee State Trooper Kevin Hoppe ("Hoppe"),

---

[1] At the outset of the hearing, counsel for the Defendants orally moved to amend Defendants' motion to suppress to include a claim Defendant Gomez's consent to search the vehicle following the traffic stop was constitutionally invalid. Defendant Gomez, however, was not prepared to present evidence and argument on the issue of consent at the hearing. Accordingly, the Defendants' oral motion to amend the motion to suppress to include the issue of consent was denied without prejudice to the Defendants filing an appropriate motion seeking leave to extend the deadline for the filing of motions in order to permit them to file an additional motion to suppress concerning the issue of consent. To date, no such motion has been filed.

2

as the sole witness at the hearing. Defendants did not call any witnesses. Hoppe testified as follows.

Hoppe has been a Trooper with the Tennessee Highway Patrol for over ten years [Doc. No. 56 at 3]. On March 28, 2006, Hoppe was on duty performing traffic enforcement around mile marker 45 of Interstate 75 ("I-75") [*id.* at 4-5]. Hoppe had parked his patrol car in the median pointing northward, roughly parallel to the "fast" or left-hand lane of southbound I-75 [*id.* at 5, 50]. As Hoppe was operating his stationary radar, he clocked a small, dark colored vehicle traveling at 83 miles per hour [*id.* at 4-6, 12, 32].

As Hoppe was preparing to pursue the speeding vehicle, he saw a Lincoln Navigator in the left-hand fast lane and an Old Dominion tractor trailer in the slow right-hand lane both traveling southbound [*id.* at 6, 13]. Hoppe observed the Navigator move into the right-hand lane less than one-car length in front of the tractor trailer [*id.* at 6-7]. Hoppe saw the tractor trailer slow down and swerve, and concluded that, had the tractor trailer not slowed down, it could have crashed into the Navigator [*id.* at 6, 13-14]. Hoppe further concluded the unsafe manner in which the Navigator pulled over in front of the tractor trailer was more dangerous than the speeding vehicle he originally sought to pursue because the Navigator was more likely to have caused a high-speed crash [*id.* at 13-14, 33-34]. Thus, Hoppe changed his focus from the speeding vehicle to the Navigator [*id.* at 43-44].

Hoppe pulled onto southbound I-75 in pursuit of the Navigator [*id.* at 9]. Once Hoppe pulled onto I-75, he activated the blue lights on his patrol car, which activated a VHS taping system in the patrol car [*id.* at 9-10, 38]. Hoppe eventually stopped the Navigator occupied by the three Defendants [*id.*]. Because Hoppe did not activate his blue lights until he pulled onto I-75, the alleged traffic violation which caused him to pursue and stop the Navigator does not appear on the

3

videotape [*id.* at 9-10]. Hoppe testified he had personally reviewed the videotape, which contains audio, and the traffic infraction involving the Navigator is not, and could not have been, captured on the videotape [*id.* at 10].

Portions of the videotape from Hoppe's patrol car were played at the hearing with some narration by Hoppe [*id.* at 18-25, 29, 30]. The time is recorded on the videotape, and Hoppe is aware of no other audio or videotape of the events at issue. Based upon the Court's observation as well as Hoppe's testimony, Hoppe activated his blue lights and, therefore, the VHS taping system around 12:07:59 p.m. [*id.* at 21]. At around 12:08:56, Hoppe is shown pursuing the Defendants' Navigator and passing the Old Dominion tractor trailer, and he can be heard to state something to the effect of "just cut this truck off here" [*id.* at 24]. He again comments around 12:09:13 that the Navigator had just cut off the truck without using turn signals.

The videotape shows the Navigator pull over around 12:09:30. Hoppe approached the passenger side window around 12:10:05. On the videotape, Hoppe is heard telling the occupants he had planned to stop another car, but was instead stopping the Navigator because "right when you passed me there you cut the truck off." [*See also id.* at 23-24]. One of the occupants, presumably Defendant Bermudes-Sanchez who was in the front passenger seat, appears to respond to Hoppe's statement by indicating the Defendants had merely "moved through."

Hoppe communicated with Defendant Bermudes-Sanchez in English and asked Defendant Bermudes-Sanchez to interpret his request for the driver's license, registration, and proof of insurance [*id.* at 25]. Hoppe took at least Defendant Gomez's driver's license and returned to his patrol car to run a check on Defendant Gomez's Oregon driver's license. As Hoppe returned to his patrol car to check the registration, he narrated on the videotape that something was up because the

4

occupants were visibly shaking and he detected an unusual scent from the vehicle. At 12:14:06, Hoppe asked dispatch to run a check on Defendant Gomez's Oregon license and Georgia tag.

Using the public address system on his patrol car, Hoppe asked the front seat passenger, Defendant Bermudes-Sanchez, to step back to his patrol car, after unsuccessfully attempting to get back-up, at 12:18:25 and Defendant Bermudes-Sanchez complied [*id.* at 26-27, 29]. In response to Hoppe's questions, Defendant Bermudes-Sanchez, who was standing outside the passenger side window of Hoppe's patrol car, told Hoppe the Defendants were traveling from Knoxville and mentioned the aquarium. Hoppe, who never received a response to his check on the registration and/or Defendant Gomez's driver's license during the several minute portions of the videotape played during the hearing, can be heard telling Defendant Bermudes-Sanchez he had not gotten a response to his check of the Oregon driver's license and that it might take a while for the results to come in.

As reflected on the videotape, Hoppe placed Defendant Bermudes-Sanchez in the backseat of his patrol car after a brief pat down and then returned to the passenger side window of the Navigator. Hoppe asked the two Defendants who remained in the vehicle where they were traveling from, and one of them responded "Virginia" [*id.* at 25-26]. Hoppe testified the nervousness of the Defendants, the unusual scent he detected in the vehicle, the lack of eye contact, and the inconsistent responses to his questions convinced him something was amiss [*id.* at 25-28].

Around 12:23:30, the videotape shows Hoppe asked for and apparently understood he received consent to search the Navigator. Hoppe quickly found a large amount of U.S. currency and a firearm [*id.* at 10-11]. He placed all three Defendants under arrest [*id.* at 11]. Ultimately, drugs and additional firearms were found in the Navigator [*id.*]. Based upon the portion of the videotape

5

played during the hearing, at the time Hoppe was given consent to search the vehicle, he still had not received a response to his check on the registration of the Navigator and/or Gomez's driver's license. Eventually, Hoppe issued citation S976606 to Defendant Gomez [*id.* at 7; Government's Exhibit 1]. The citation states it was issued for improper passing under Tenn. Code Ann. § 55-8-117 and not wearing a seatbelt in violation of Tenn. Code Ann. § 55-9-603. The narrative on the citation states Hoppe "observed vehicle cut off a CMV (Double Trailer)" and the "T.T. had to slow."

## Analysis

**1.    Defendants' Joint Motion to Suppress**

   *A.    The Vehicle Stop*

Defendants assert Hoppe did not have probable cause to stop the Navigator. Vehicle stops are permitted when reasonable suspicion exists based upon the totality of the circumstances that the vehicle's occupants are engaging in or have engaged in criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Hensley*, 469 U.S. 221, 226 (1985). It is also well established the police may lawfully detain a vehicle and conduct a brief stop of the occupants if there is probable cause to believe a traffic violation has occurred, even if the traffic offense is minor and the officer had additional subjective reasons for making the stop. *Whren v. United States*, 517 U.S. 806, 810, 812-13 (1996); *United States v. Herbin*, 343 F.3d 807, 809 (6th Cir. 2003).

Tennessee Code Ann. § 55-8–117 states in pertinent part "[t]he driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." Based upon Hoppe's credible and consistent testimony, Hoppe had probable cause for the traffic

6

stop of the Navigator based upon his personal observation of the operation of the Navigator and the tractor trailer. *See United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006) (officer may stop a moving vehicle when there is probable cause to believe a traffic violation has occurred).

Defendants challenge Hoppe's credibility based primarily on Hoppe's narration on the videotape about the Navigator "just" cutting off the truck. Defendants contend what is recorded on the videotape at the time of Hoppe's comment is the actual lane change for which the Navigator was stopped, and that the videotape shows there was no violation of Tenn. Code Ann. § 55-8–117. In order to find for the Defendants on this issue, the Court would have to find Hoppe's testimony about seeing the Navigator "cut off" the tractor trailer prior to activating the video camera in his patrol car is not credible. To the contrary, having observed Hoppe's testimony and demeanor and the videotape, the Court concludes Hoppe's testimony is credible.

Hoppe's narration on the videotape, particularly his comment "just cut off this truck here," is not sufficient to call his credibility into question. Although Defendants suggest the comment is made at the point Hoppe observed the alleged traffic violation, the government counters the comment was made when Hoppe passed the tractor trailer that had previously been cut off by the Navigator as Hoppe was pursuing Defendants down southbound I-75. The Court concludes Hoppe's comment is simply too ambiguous to refute his credible testimony the traffic violation at issue is not recorded on the videotape.

Also supporting Hoppe's testimony is his comment on the videotape telling the Defendants they were stopped for cutting off the tractor trailer truck when they passed Hoppe [*See also id.* at 23-24]. In contrast, Defendants have offered no evidence to rebut Hoppe's testimony that they did, in fact, commit a traffic violation at the time they passed Hoppe in the median. Defendants'

7

arguments about the alleged minor inconsistencies in the government's pleadings opposing the motion to suppress do not call into question Hoppe's credibility.

Defendants also argue that to the extent they did change lanes at the time they passed Hoppe's vehicle in the median of I-75, they were responding to an "emergency" created by Hoppe. Defendants argue Hoppe's actions; namely, the fact his patrol car was in the median of I-75 allegedly 10-12 feet from the left-hand lane in which they were driving, necessitated the lane change and precipitated the "infraction" observed by Hoppe [Doc. No. 57 at 5-6]. In support of their argument, Defendants cite Tenn. Code Ann. § 55-8-132, which states in pertinent part:

> (a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of the applicable laws of this state, or of a police vehicle properly and lawfully making use of an audible signal only:
>
> (1) The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed . . .
>
> (b) Upon approaching a stationary authorized emergency vehicle, when such vehicle is giving a signal by use of flashing lights, a person who drives an approaching vehicle shall:
>
> (1) Proceeding with due caution, yield the right-of-way by making a lane change into a lane not adjacent to that of the authorized emergency vehicle, if possible with due regard to safety and traffic conditions, if on a highway having at least four (4) lanes with not less than two (2) lanes proceeding in the same direction as the approaching vehicle; or
>
> (2) Proceeding with due caution, reduce the speed of the vehicle, maintaining a safe speed for road conditions, if changing lanes would be impossible or unsafe.

Defendants assert a reasonable interpretation of Hoppe's testimony "would be that Trooper

8

Hoppe had begun moving into the left hand lane or at least moving towards that lane when he was passed by the Navigator and the Old Dominion Truck. In so doing he would have moved even closer . . . to the lane he alleges the Navigator was in when it passed him and cut the truck off" [Doc. No. 57 at 6]. Defendants argue if the foregoing "is true then surely [Hoppe's] movements necessitated left hand lane traffic to move over immediately and perhaps even evasively." [*Id.*].

Defendants have presented no evidence supporting their assertion Hoppe's actions precipitated the traffic infraction, and Hoppe's testimony does not support such a contention. Hoppe testified that as he was in the median of southbound I-75, when he observed the traffic infraction involving the Navigator and the tractor-trailer [Doc. No. 56 at 5-6]. After observing the traffic infraction, Hoppe pulled out as soon as it was clear and gave chase to the Navigator and stopped it [*id.* at 7]. Hoppe did not activate the blue lights on his patrol car until after he pulled onto I-75 [*id.* at 9].

On cross-examination, Hoppe was specifically asked about his actions between the time he "clocked" the speeding vehicle on radar and the time he pulled onto I-75 after observing the traffic violation at issue. Hoppe testified:

> Okay. I'm facing north, I clock a car at 83 miles an hour. As I said, I put it in gear and I'm getting ready to go turn around and pull out, and, anyway, I see in front of me an Old Dominion truck and the subject car in the fast lane. It cuts the truck off.

[*id.* at 33]. Hoppe continued:

> Basically, I saw the Lincoln Navigator as it's coming up on me cut the Old Dominion truck off. I'm still in the median when it happened. And then I have to wait for additional vehicles to pass where I can safely pull on the interstate.

[*id.* at 36]. Hoppe also stated that when he observed the traffic infraction, "I think I was getting

9

ready to pull out, but I hadn't pulled out. I may have been getting ready to start the motion to pull out" [*id.* at 44].

This testimony does not indicate Hoppe precipitated the traffic infraction or that Defendants pulled into the right-hand lane of I-75 in front of the tractor trailer as a required response under Tenn. Code Ann. § 55-8-132. Hoppe credibly testified he did not activate his blue lights until after he had observed the traffic infraction. As Hoppe had not activated the blue lights on his vehicle, the provisions of Tenn. Code Ann. § 55-8-132, which may have required the Navigator to change lanes or slow down are not applicable. Even if such provisions were applicable, the uncontradicted testimony is the Defendants did not proceed with due caution as required under the provisions of Tenn. Code Ann. § 55-8-132 but instead cut off the tractor trailer. The Court concludes Defendants' argument Hoppe's actions precipitated the traffic violation because they responded to an "emergency" created by Hoppe is without merit. Thus, the Court concludes the traffic stop was proper and the stop does not support suppression of the evidence.

### B.     *The Scope of the Detention*

Finding a valid traffic stop justified at its inception does not end the inquiry in this case because the detention must be related in scope to the circumstances that justified the stop in the first place. *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996). While a police officer may stop a motorist whom he has probable cause to believe has committed a traffic violation, he cannot continue to detain that motorist after the initial purpose of the stop is completed "unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999); *accord United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996).

When a vehicle is lawfully stopped, an officer may request a driver's license and vehicle registration from the driver. *See Berkemer v. McCarty*, 468 U.S. 420, 437-38 (1984); *Hill,* 195 F.3d at 269. The driver of a vehicle may be detained until after the officer has finished verifying the driver's license, checking other records, and issuing a citation, as such acts are within the purpose of the initial stop. *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999); *Bradshaw*, 102 F.3d at 212. It is well-settled law, however, that when the purpose of a traffic stop has been accomplished, an officer cannot further detain a vehicle or its occupants unless facts occur that would generate reasonable suspicion to justify further detention. *Weaver v. Shadoan*, 340 F.3d 398, 408 (6th Cir. 2003); *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). Reasonable suspicion must be supported by specific articulable facts. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998), *cert. denied*, 525 U.S. 1123 (1999).

A court must look at the totality of the circumstances when determining whether the length and manner of an investigative stop are reasonable in comparison to the basis for the initial intrusion. *United States v. Sharpe,* 470 U.S. 675, 686 (1985) (holding it appropriate to examine whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly in determining whether a detention was too long to be justified as an investigative stop); *United States v. Calderon-Valenzuela*, Nos. 98-4353, 98-4355, 2000 WL 571953, at * 4 (6th Cir. May 3, 2000) (focus is on the diligence of the police and not on the length of the detention). Generally, if a detention exceeds its proper scope, then any evidence seized during the illegal detention must be suppressed as fruit of the poisonous tree. *Hill*, 195 F.3d at 264.

Based on the credible evidence, the detention of Defendants was related to the purposes of the traffic stop. Certainly, the request for registration and a driver's license was well within the

11

initial purpose and objective of a traffic stop. *See Wellman*, 185 F.3d at 656 (citing *Bradshaw,* 102 F.3d at 212); *United States v. Faulkner*, No. 04-5589, 2005 WL 1312858, at * 4 (6th Cir. May 31, 2005). In addition, the limited questions Hoppe asked the Defendants prior to the time he received consent to search and his request to search the Navigator did not violate the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 497 (1983); *Erwin*, 155 F.3d at 822-23; *United States v. Dunson*, 940 F.2d 989, 994 (6th Cir. 1991).

In *United States v. Burton*, the issue before the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") was whether it was reasonable under the circumstances for an officer to ask someone detained during a traffic stop a few questions unrelated to the initial reason for the traffic stop. 334 F.3d 514, 518-19 (6th Cir. 2003), *cert. denied*, 540 U.S. 1135 (2004). In *Burton* an officer initiated a traffic stop due to a curbside parking violation, and he spoke with the driver outside the stopped vehicle regarding his driver's license, ownership of the vehicle, and whether anything illegal was inside. *Id.* at 515. The officer then asked whether the driver would consent to a search of the vehicle, and the driver agreed. *Id.* at 516. On review, the Sixth Circuit concluded the scope and duration of this traffic stop was reasonable because the handful of questions the officer asked the driver were not unusually intrusive and did not make the traffic stop any more coercive than a typical traffic stop. *Id.* at 518-19; *see also United States v. Alva*, No. 03-5175, 2004 WL 1661990, at * 3-4 (6th Cir. July 20, 2004) (holding questions asked of vehicle occupants, including whether vehicle contained anything illegal and whether officer could search the car, did not violate the Fourth Amendment because questions were reasonable, on same basis as and in reliance on *Burton* decision) *cert. granted and judgment vacated on sentencing grounds by* 125 S. Ct. 1041 (2005), *opinion reinstated as to conviction by* 405 F.3d 383 (6th Cir. 2005).

12

The handful of questions Hoppe asked Defendants during the traffic stop were not unusually intrusive and did not make the stop coercive. The videotape shows Hoppe did not ask any questions of Defendants until after he had observed their nervous behavior and the unusual odor coming from the Navigator. Only after making such observations did he ask Defendants where they were coming from and only after receiving conflicting responses did he ask for consent to search the vehicle.

The videotape shows at all times Hoppe asked questions and received consent to search the Navigator, he was still waiting for the results of his check on the registration and driver's license. It was reasonable for Hoppe to continue his detention of the Defendants for a long enough period of time to obtain the results of the check on the registration and license of Defendant Gomez. The length and manner of the stop from the initial contact at 12:09:30 when the Navigator pulled over until consent to search was obtained at 12:23:25 and the Defendants were placed under arrest at 12:26:12, was reasonable under the totality of the circumstances. *See United States v. Knox*, 839 F.2d 285, 290-91 (6th Cir. 1988), *cert. denied*, 490 U.S. 1019 (1989) (thirty minute delay not unreasonable). The approximately 16 minutes this delay was justified by the circumstances, including, but not limited to the unusual nervousness of the Defendants, the conflicting stories given by the Defendants as to where they were traveling from, the unusual odor in the Navigator, and the time needed to obtain a check on the tag and Defendant Gomez's driver's license. Thus, the Court concludes the scope of the detention did not exceed the purpose of the traffic stop, and does not support suppression.

To the extent any of the Defendants persist in the argument Hoppe illegally entered the Navigator prior to obtaining consent to search, it is clear from the videotape his entry was limited to retrieving the identification presented to him. Nothing about this brief and limited entry supports

13

suppression.

Likewise, Defendants' argument concerning Hoppe's requests that first one and later all of the Defendants exit the Navigator fails to support suppression because Hoppe's requests were reasonable under the circumstances. An officer making a traffic stop may order the occupants of the car to get out of the car until the stop is completed. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997). An officer may also lawfully ask an occupant to sit in the officer's patrol car while the officer completes routine traffic stop tasks. *Wellman*, 185 F.3d at 656 (officer lawfully asked defendant to sit in squad car while writing courtesy citation and performing record check of driver's license and registration); *Bradshaw*, 102 F.3d at 211-212 (explaining temporary detention of driver in patrol car for officer safety and while performing radio checks and issuing citation was well within bounds of initial stop).

Similarly, Hoppe's patdowns of the Defendants fail to support suppression. During an investigative detention, a police officer may conduct a protective "frisk" for weapons if he has a reasonable articulable suspicion the suspect may be armed or that the officer's safety may somehow be jeopardized. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence" *Adams v. Williams*, 407 U.S. 143, 146 (1972). The United States Supreme Court has made it clear that when a police officer "'is justified in believing that [an] individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons." *Id.* (quoting *Terry*, 392 U.S. at 24). "[R]oadside encounters between police and suspects are especially hazardous, and . . . danger may arise from the possible presence of weapons in the area surrounding

14

a suspect." *Michigan v. Long*, 463 U.S. 1032, 1049. The Court concludes Hoppe's patdowns of the Defendants, which found no evidence, were reasonable. Under the circumstances, the patdowns do not support suppression.

**2.      Defendants' Joint Motion to Permit Expert Testimony**

Defendants have filed a joint motion to introduce the expert testimony of Leighton Sissom, Ph.D., P.E. ("Dr. Sissom"), regarding the "distances, angles, time and speed" between the Navigator and the tractor trailer [Doc. No. 51 at 1].[2] In connection with their joint motion to introduce expert testimony, Defendants have filed Dr. Sissom's July 24, 2006 expert report [Doc. No. 52-2]. A review of Dr. Sissom's report reveals he reviewed the videotape concerning the traffic stop of Defendants' Navigator, and concluded no traffic violation occurred and/or could have been seen by Hoppe [*id.* at 1-2]. Dr. Sissom's expert report and anticipated testimony, however, are based on the faulty premise the alleged traffic violation is captured on the videotape at the point where Hoppe makes the comment about just cutting off the truck.

As noted above, Hoppe unequivocally and credibly testified videotaping did not begin until after he observed the traffic violation. Defendants have not explained how Dr. Sissom's anticipated expert testimony would be helpful given the traffic violation does not appear on the videotape. Thus, the Court concludes Dr. Sissom's expert report and testimony would not be helpful to the

---

[2] Shortly before the commencement of the hearing, Defendants filed a joint motion to continue the hearing based upon the inability of Dr. Sissom to testify due to an unexpected illness and based upon their request to discover information and respond to the government's position the videotape does not show the traffic violation [Doc. No. 55]. Defendants' joint motion to continue was denied, subject to reopening the suppression hearing if the Court determined Dr. Sissom's expert testimony would be helpful to the Court. In addition, Defendants were given an opportunity to file a post-hearing brief regarding issues raised in the hearing, including where the videotape shows the traffic violation. As the Court has concluded Dr. Sissom's expert testimony would not be helpful to the Court in resolving the issues presented, the hearing need not be reopened.

15

finder of fact under Fed. R. Civ. P. 702. Accordingly, it is **RECOMMENDED** Defendants' joint motion to permit expert testimony [Doc. No. 51] be **DENIED**.

## Conclusion

For the reasons stated herein, it is **RECOMMENDED**[3] Defendants ' joint motion to suppress [Doc. No. 47] and joint motion to permit expert testimony [Doc. No. 51] be **DENIED**.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

16